IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON CLARK et al., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:11-cv-01623 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| DALE PROPERTY SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is the Defendants' motion to transfer venue of this case from this District to the United States District Court for the Northern District of Texas at Dallas. ECF No. 3. Also pending is the Defendants' Motion to Strike certain record submissions by the Plaintiffs. ECF No. 37. Those matters having been fully briefed by the parties, they are ripe for disposition by the Court. For the reasons which follow, those Motions are denied.

In this action, Plaintiffs seek a declaration that they are in fact and in law employees of Defendants rather than independent contractors bound under a contract, and seek money damages under several Pennsylvania statutes. ECF No. 29. The Defendants removed this action from the Court of Common Pleas of Washington County, Pennsylvania to this Court, and have not claimed that venue here is improper.[1] They instead argue that venue is far more appropriate in Texas, and rely (exclusively) on the provisions of the involved Independent Contractor

---

[1] In fact, their Notice of Removal recites that venue in this District is proper. ECF No. 1 at 5, ¶ 16.

1

Agreement ("Agreement") which they allege each of the Plaintiffs in this action has executed as the basis of their Motion to Transfer.

Article 13 of the Agreement provides as follows:

> The validity of this Agreement and of any of its terms or provisions, as well as the right and duties of the parties hereunder, shall be governed by the laws of the State of Texas excluding its conflict of laws principles. The exclusive forum for any lawsuit arising from or related to this Agreement shall be a state or federal court in Dallas County, Texas. This provision does not prevent Company from removing to an appropriate federal court any action brought in state court. CONTRACTOR HEREBY CONSENTS TO, AND WAIVES ANY OBJECTIONS TO, REMOVAL TO FEDERAL COURT BY COMPANY OF ANY ACTION BROUGHT AGAINST IT BY CONTRACTOR. IN THE EVENT THAT ANY DISPUTE ARISING FROM OR RELATED TO THIS AGREEMENT RESULS IN A LAWSUIT, BOTH COMPANY AND CONTRACTOR MUTUALLY WAIVE ANY RIGHT THEY MAY OTHERWISE HAVE FOR A JURY TO DECIDE THE ISSUES IN THE LAWSUIT, REGARDLESS OF THE PARTY OR PARTIES ASSERTING CLAIMS IN THE LAWSUIT OR THE NATURE OF SUCH CLAIMS. COMPANY AND CONTRACTOR IRREVOCABLY AGREE THAT ALL ISSUES IN SUCH A LAWSUIT SHALL BE DECIDED BY A JUDGE RATHER THAN A JURY.

ECF No. 4-1 at 5. Invoking 28 U.S.C. § 1404(a), Defendants seek transfer of this action for the convenience of the parties and witnesses and in the interest of justice.[2]

---

[2] The parties battle over whether venue anywhere other than this District could be proper under the provisions of 28 U.S.C. §1391(b) as applicable at the time this action was filed. Defendants assert, supported by a sworn declaration of a corporate officer, ECF Nos. 15-1, 20, that each of the Defendants is "found" and resides in Texas, as each is a Texas corporation with a principal place of business in Texas. Plaintiffs counter by asserting that the Agreement itself says that the principal place of business of the Defendant Dale Property Services Penn L.P. is within this District, not Texas. ECF No. 30 at 3. This point is important, they argue, because the premise of the application of the *Jumara* test, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3rd Cir. 1995), is that venue is proper, statutorily, in both the "as filed" District and in the proposed new venue. *Id.* Unless venue is proper as a matter of statute in both venues, there is no *Jumara*-guided analysis to make. While there can be no doubt that a fair reading of the Amended Complaint demonstrates that venue is proper in this District by virtue of §1391(b) (2), there does appear to be a factual issue as to whether the statement of corporate residence in the preamble to the Agreement trumps the averment of Defendant Dale Property Services Penn's corporate location noted in the Defendants' declaration made for purposes of this Motion to Transfer. That declaration supports the assertion of venue in Texas by verifying that the "principal place" of business for that Defendant declared to be in that state is based on that being the "nerve center" of its operations. The filings of record by both parties reveal that it does maintain an operational location in this District. While the seemingly contradictory language as to principal business location in the Agreement is troublesome, the Court will assume for the purposes of this Opinion that venue is statutorily proper either in this District because the claims arose here, 28 U.S.C. §1391(b) (2), or in the Northern District of Texas because all Defendants are resident there, 28 U.S.C. §1391(b) (1). As noted below, that issue is not dispositive to the result.

2

The burden of establishing the proprietary of a transfer rests with the moving party. *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971). Article 13 of the Agreement contains a forum selection clause which, under our Circuit's relevant case law, is treated as a manifestation of the parties' preference as to a convenient forum. *See Jumara v. State Farm Insurance Company*, 55 F.3d 873, 880 (3d Cir. 1995). The parties' agreement to a designated forum is entitled to substantial, albeit not exclusive nor conclusive, consideration, and where a plaintiff has freely and contractually chosen an appropriate venue other than the forum in which the case is pending, it is appropriate for the Court to decline to afford the usual heightened level of deference to a plaintiff's otherwise controlling choice of the forum (in this case a Pennsylvania court), and transfer the action. As noted in *Jumara*, forum selection clauses are generally valid so long as there has not been fraud, undue influence or substantially unfair bargaining power applied in their formation and, as a general matter, plaintiffs are to demonstrate why they should not be bound by a contractual forum selection clause when a defendant seeks to use it to transfer a civil action. *Jumara*, 55 F.3d at 880.[3]

The first question to be addressed is whether, by its terms, the forum selection clause would even apply to this dispute. The operative provision of Article 13 of the Agreement states "[T]he exclusive forum for any lawsuit *arising from or related to* this Agreement shall be a state or federal court in Dallas County, Texas." (Emphasis added). ECF No. 4-1 at 5. The Court is satisfied that on the record developed to date it would be difficult to conclude that this lawsuit is one "arising from" the Agreement. The crux of the Plaintiffs' lawsuit is that (1) they are not and never have been independent contractors; (2) that the Agreement does not set forth the terms of their engagement as true employees by the Defendants; (3) and in fact they are now and always

---

[3] Federal law provides the rule of decision as to the transfer issue. *Jumara*, 55 F.3d at 877-78.

3

have been employees of the Defendants. Consequently, the Plaintiffs do not seek to enforce any of the provisions of the Agreement and instead assert only claims under various provisions of the statutory and common law of Pennsylvania. Thus, the first proviso of the forum selection clause -- the "arising from" construct -- is simply not applicable here and would not and could not trigger the transfer of this action to the Northern District of Texas.

The second applicability "trigger" contained in the Agreement's forum selection clause presents a thornier issue. It provides that a state or federal court in Dallas County, Texas is the exclusive forum for any lawsuit "related to" the Agreement. Once again, it is worth noting that the very point of the Plaintiffs' lawsuit is to assert statutory and Pennsylvania common law claims distinct from (and fundamentally inconsistent with) an independent contractor relationship, and seeks a declaration that the Plaintiffs have been and are now employees (and only employees) of the Defendants. If correct, Plaintiffs' assert that this would entitle them to coverage under various Pennsylvania protective statutory provisions, the recovery of money damages along with interest and attorneys' fees, and participation in various retirement and employee health and welfare plans maintained by the Defendants which Defendants, by their notice of removal, necessarily concede are ERISA-covered, employer-sponsored retirement or welfare plans.

What makes the analysis complicated are the allegations of Count VI of the Plaintiffs' Amended Complaint, which seeks the rescission of the Agreement as to each Plaintiff. An examination of the allegations of Count VI of the Complaint does not reveal that the grant of the remedy of rescission would seem to work any independent material benefit on the Plaintiffs in the context of the claims asserted in the balance of the Complaint. In essence, they seek in Count VI a declaration that the Agreement does not control the terms and conditions of their engagement by the Defendants or their provision of services to them or on their behalf. They

4

allege in Paragraph 100 of the Amended Complaint that the Agreement is void as a matter of public policy, in Paragraph 101 that it is unconscionable, in Paragraph 102 that it illegally shifts the burden of certain costs which would be paid by an employer to the Plaintiffs, has resulted in the Defendants' unjust enrichment and has by the natural result of the relationship between Plaintiffs and Defendants, conferred substantial benefits on the Defendants to which Plaintiffs claim the Defendants have no entitlement.

It would appear to the Court that were the Plaintiffs found to be in an employment relationship with one or more of the Defendants, most (if not all) of the provisions of the Agreement would have fallen by the wayside by operation of law in the resolution of those claims, including but not limited to any obligations for the Plaintiffs to personally bear significant benefit and related expenses that would otherwise be borne by an employer in an employee/employer relationship. Such a result as to employee status and the validity of the Agreement cannot stand simultaneously. Thus, it is arguable that the inclusion of the claim for rescission is better viewed as being surplusage and unnecessary to the vitality of the Plaintiffs' other claims. However, the Court must nonetheless take the case as it is stated by the Plaintiffs for the purposes of ruling on the Defendants' transfer motion.

In ruling on the applicability of the forum selection clause, the central question is therefore whether because of the Plaintiffs' effort to annul the Agreement in the only claim asserted that directly addresses the Agreement, this civil action is nonetheless "related to" the Agreement, and if so, whether the forum selection provisions of Article 13 mandate its transfer to the Northern District of Texas. Our Court of Appeals directly considered the concept of "relatedness" in the context of a forum selection situation in *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997) ("*Wyeth*"). In *Wyeth*, the clause at issue used the term "arising under or out of or in relation to" an insurance agreement. 119 F.3d at 1072.

5

The *Wyeth* plaintiff, in addition to seeking money damages, sought a declaratory judgment that CIGNA, as an insurer, was obligated to pay certain unreimbursed defense costs. Wyeth contended that the reimbursement obligation arose from insurance agreements that did not contain a forum selection clause and not from a more recent agreement between the parties containing such a clause. 119 F.3d at 1073.

Then-Judge Alito, writing for our Court of Appeals, held that the term "related to" was to be given the broadest possible reading, *Wyeth*, 119 F.3d at 1075, and extended to any action the outcome of which could conceivably have any effect on the agreement at issue. *Id.* (citing *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984)(applying "related to" concept in bankruptcy context). *See also Kahn v. American Heritage Life Insurance Co.*, Civ. Action No. 06-01832, 2006 WL 1879192 (E.D. Pa. June 29, 2006) (same).

Applying these principles here requires the Court to conclude that Plaintiffs' claims, at least those contained in Count VI, while not "arising" from or under the Agreement do "relate" to it. If Plaintiffs succeed on their rescission claim, the Agreement will be vitiated, which is certainly an "effect" on it. While Plaintiffs carefully do not claim a breach of the Agreement, neither did the plaintiff in *Wyeth*, 119 F.3d at 1074, n.3. Therefore, the forum selection clause contained in the Agreement facially applies to the consideration of the transfer motion.

That conclusion, however, does not resolve the question of whether this action is to be transferred, since the *Jumara* Court noted that, among other factors, a plaintiff's original choice of forum carries great weight. That said, when the parties previously chose by contract a stated appropriate venue, special deference to the "where filed" forum vanishes, but all consideration of that choice does not. If the forum selection clause is valid, meaning that there has been no "fraud, influence, or overweening bargaining power" in its acquisition, *Jumara*, 55 F.3d at 880 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972)), the plaintiffs are

6

obligated to demonstrate why they should not be bound by the contractual choice of forum. *Jumara*, 55 F.3d at 880.

Even under that *Jumara* formulation, however, the forum selection clause does not trump all other factors. Our Court of Appeals in *Jumara* recognized a number of "private" and "public" factors that the district courts are to factor into the equation. The "private" factors include the plaintiff's original forum choice (without giving it the usual "special" weight), the location at which the claim arose, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of witnesses to the extent that they would be unavailable for trial in one of the potential fora, and the location of relevant books and records. The "public" factors include the enforceability of any judgment, practical considerations making trial easier, more expeditious or less expensive in one locale rather than the other, any local interest in deciding local controversies "at home", public policies of the fora, administrative matters affecting the court dockets, and the familiarity of the trial judge with state law where it provides the rule of decision. *Jumara*, 55 F. 3d at 879-80. As the *Jumara* court noted, it is essential that this Court consider each of these factors, giving the forum selection clause substantial, but not dispositive, effect.[4]

This Court authorized phased discovery in this case, ECF No. 24, with the intent being that the first phase allow the development of a testimonial record on the issue of the bargaining power of the respective parties in the procurement of the Agreement, specifically the forum selection clause. This the parties have accomplished, and they have each filed supplemental papers setting forth their respective positions. ECF Nos. 30, 31. The essence of the Defendants' position is that the clause is clearly written, in plain English, it is part and parcel of the

---

[4] An examination of the papers filed by the Defendants reveals that they do not appear to argue that the weight of all of the *Jumara* factors carries this case to Texas, but only that the forum selection clause does. They base their entire argument on the impact of the forum selection clause. As *Jumara* and its progeny demonstrate, such a clause is important, but not conclusive, and this Court is required to consider it as part of the larger *Jumara* calculus.

7

Agreement, which was indisputably signed by each Plaintiff. No Plaintiff sought to excise the clause, or to vary its terms, and no person, including any Plaintiff, was prevented for questioning or seeking to eliminate the forum selection clause. According to the Defendants, no person was threatened or bludgeoned into signing the Agreement, the possibility of termination was not held over any signatory's head if they did not sign up, no one was "not hired" for declining to sign the Agreement, and no one sought a modification of the terms of the Agreement and was then met with a denial. Defendants note that the Plaintiffs were not obligated to "sign on the spot" and had time at home to consider its terms, and in fact one or more of the Plaintiffs conceded that while they had the opportunity to do so, they did not read the Agreement, and at best, "skimmed" it.

Plaintiffs, via deposition testimony and other record submissions, contend that they had no choice but to sign the form of Agreement, as is, or face the loss of the relationship with Defendants. They note that in some cases they signed the Agreement substantially after the commencement of their services, did so within this judicial District, and that Defendant executed the Agreements in this District. They assert via their testimony that while certain portions of the Agreement were explained to them, the forum selection clause was not part of the discussion. Finally, they contend that there is a fundamental and substantial imbalance in the standing, financial and otherwise, of the parties that makes the application of the clause inequitable here, and weighs strongly in favor of the action remaining in this Court, either because such imbalance renders the clause invalid, or if valid, that factor weighs so heavily in favor of the case remaining here that it carries nearly preeminent importance.

The parties spar considerably over what "record" this Court may consider in ruling on the Motion to Transfer. The Defendants argue that the Court should not consider, and in fact should strike, supporting testimonial affidavits submitted by Plaintiffs as being beyond the scope of the "phased" discovery directed by the Court. The Plaintiffs counter that the parties had an express

discussion about the scope of that discovery, and reached an agreement as to the depositions that would and would not be taken, that the Defendants have no basis to complain in that Defendants served a substantial number of interrogatories and document requests on the Plaintiffs, including those directed to the affiants, and that in any event this Court's pretrial Order did not bar the submission of affidavits (or any other record material) in support of, or opposition to, the transfer motion.[5]

The essence of the Defendants' argument is that if the forum selection clause is applicable and valid, the case must be transferred. That is not the sort of simplistic, one stop shopping analysis that the *Jumara* Court directed the district courts to conduct. Given the breadth of the *Jumara* factors, the disposition of the Motion to Transfer does not, as the Defendants posit, begin and end with the forum selection clause, and the Court does not find it either necessary, or appropriate, to strike any of the submissions advanced by either party. While the phased discovery provision in the Case Management Order authorized two (2) depositions, it did not limit the record that either party could otherwise make on the transfer issue, and also expressly authorized the supplementation of the record that each party had previously submitted. In any event, the record that has been established by the uncontested portions of the record is sufficient for this Court to resolve the issues raised by the Motion to Transfer.

As to whether the Agreement and, therefore, the forum selection clause, is the product of a fundamental imbalance in bargaining power, the core deposition testimony regarding the "voluntariness" of the execution of the Agreements is in substantial tension. Defendants say that

---

[5] The root of the issue between the parties appears to be how they elected to construe between themselves this Court's Case Management Order as to the scope of the phased discovery in terms of how many depositions each party could take in Phase I. The Court would note that the parties seemingly elected to avoid the simplest and most direct route to not only avoiding such a dispute, but to resolving it. Neither party made any effort to engage the Court by motion or, as this Court's published and well-known Chambers procedures and standard Order Regarding Motion Practice provide, by simply contacting the Court and asking for a status conference to resolve the matter. In short, this battle would have been avoided had counsel simply done what the Court advised them to do, repeatedly, and contacted the Court for an opportunity to raise the issue, and then have it resolved.

9

no one was fired for not signing the Agreement, no one refused to sign the Agreement, and no one was denied the right to ask questions about it.[6] To the contrary, Plaintiffs contend that two of the Plaintiffs were in fact told by representatives of the Defendants that they would not be retained if they did not sign it, signing the Agreement was not by any measure a matter of choice, and that Defendants can hardly be heard to complain about the affidavits supplied in support of Plaintiffs position which came on the heels of dozens of interrogatories asked of the Plaintiffs and answered by them. As to the submitted affidavits, the Defendants advance no basis to support a conclusion that any Plaintiff-proffered affiant would have testified contrary to their affidavits on this issue, and in any event, much if not all of what is contained in them as to the execution of the Agreement is duplicative of testimony adduced via the agreed upon depositions.

For the reasons that follow, the Court concludes that the application of all of the *Jumara* factors, notwithstanding how the "relative bargaining power" analysis would come out, strongly counsels in favor of this case remaining in this District. Considering the *Jumara* factors *seriatim* demonstrates why, even giving the forum selection clause the requisite weight, the case should remain in this Court. First, there can be no doubt that Plaintiffs strongly prefer to litigate here - - this is where the case was originally filed, albeit in state court, and they have been adamant in their fight to keep it here. The claims alleged arose here, where the services are to be, and have been, performed. While Defendants contend that their principal business headquarters are in Texas, it is also beyond dispute that they maintain very significant operations here, and have business offices in this District relevant to the operations that underlay the services to be performed by Plaintiffs, whether as "contractors" or as "employees". The Defendants' supervisors and the Plaintiffs, who would be the primary witnesses, are or were in this District.

---

[6] While it is true that the presence of the clause within a "form" agreement does not render it invalid, especially since any signatory Plaintiff could have simply declined the "deal" and taken their services elsewhere, *Barbuto v. Med. Shoppe Int'l, Inc.* 166 F. Supp.2d 341, 346 (W.D. Pa. 2001), such a truism does not resolve the question before the Court.

10

To the extent the location of "books and records" will be relevant to the resolution of the claims and defenses asserted, given that all of the relevant services have been performed in this District, rather than Texas, it would appear that at minimum, copies of the relevant papers will be easily accessible here. These factors, separately and collectively, cut strongly and squarely in favor of the case remaining in this District.

The enforceability of any judgment rendered in this Court does not appear to be an issue, as Plaintiffs do not contend that a judgment rendered against any Defendant here would be any less enforceable than one obtained in a Texas court. This Court is operating with a full complement of judicial officers, is recognized for its record in facilitating the prompt disposition of civil actions, and it is not demonstrably more expensive or cumbersome to resolve cases (including this one) here, rather than in Texas. The vast majority of the substantive claims asserted arise if at all under Pennsylvania law, and, while it may be necessary to apply the substantive law of Texas to resolve the question of the validity of the Agreement, to the extent the Court is required to address the substance of any of the varied claims asserted under Pennsylvania law (and the defenses to them), that will certainly be the type of "local" matter better addressed in a Pennsylvania court. While in the Court's judgment these factors also weigh in favor of this case remaining in this District, at minimum, they certainly do not support its transfer.

While the discovery dispute noted above includes issues related to the claimed financial hardship to the Plaintiffs of litigating this matter in Texas, the Court need not conclusively resolve that question. Even Defendants do not aver that any of the Plaintiffs are of substantial enough means such that taking this case on the road, and half a continent away to Texas, would work either no, or only minimal, hardship on Plaintiffs. In the same vein, Defendants, who appear from the record to be "doing business" here in a substantial fashion under any test used,

11

do not contend that, viewed through the "cost of litigation" lens, addressing this case here works some particular financial harm on them. Finally, the Court concludes that it is certainly no more poorly positioned than would be a Texas court to address the relevant state law issues, which are predominantly matters of Pennsylvania law, should the merits of the Plaintiffs' claims be reached. Thus, these factors do not otherwise fulfill the Defendants' burden to justify transfer.

The uncontested Phase I discovery record demonstrates that there is, at minimum, a hotly contested issue as to the relative bargaining power of the parties in the procurement of the Agreement. Because the other *Jumara* factors cut so squarely against transfer, and this final issue as to whether Plaintiffs could conclusively demonstrate that the forum selection clause should be disregarded as the product of contractual overreaching is so intertwined with the merits of the case, the Court concludes that it is not necessary to resolve it with finality in the context of this Motion. Attempting to do so now would only result in the duplicative and unnecessary expenditure of party and Court resources in doing so first for the resolution of this Motion, and then again on the merits.[7] Suffice it to say that it appears as a matter of both the uncontested record, and logic, that transferring this case will work a measurable hardship on Plaintiffs, even if the Agreement's forum selection clause is not the product of overreaching at the time of contract formation.

Because the application of the uncontested record facts to the case-specific *Jumara* test cuts so substantially in favor of the case remaining in this District, the question remaining is whether, giving it "substantial" weight, the forum selection clause nevertheless compels the transfer of this action. Stripped to its essentials, this is the core of Defendants' transfer argument.

---

[7] Although not specifically enumerated by the *Jumara* court as discrete factors to be considered explicitly, the Court would note that Plaintiffs' counsel is resident in this District, and unlike the situation in *Jumara*, this does not boil down to the choice between two venues directly adjacent to each other, but to one between two venues thousands of miles apart. *See Jumara*, 55 F. 3d at 882-83. Neither of those factors was present in *Jumara*.

The Court concludes that that clause does not compel such a transfer. Here, the only thing that ties this case into the forum selection clause is the claim in the Amended Complaint seeking rescission of the Agreement. While that makes this case "related to" the Agreement under the *Wyeth* standard, it is only by the slenderest of reeds that that is so. The claims asserted in no way seek to have this Court apply any term of the Agreement, and in fact, seek to avoid the application of that document entirely. Given the overwhelming way in which the *Jumara* factors favor the litigation of this action in this District, in the Court's judgment, to transfer this action to Texas would necessarily be tantamount to the Court giving "conclusive" weight to the forum selection clause, which it may not do under *Jumara*.[8]

For these reasons, the Defendants have not established the propriety of transferring this case, and to the extent required, the Plaintiffs have carried their obligation of showing why, applying all of the elements to be considered under the *Jumara* standard, the forum selection clause does not mandate such a transfer.[9] The Motion to Transfer this action to the United States

---

[8] The Defendants rely heavily on the opinion in *Centimark Corp. v. Jacobsen*, Civ. Action No. 11-1137, 2011 WL 6000719 (W.D. Pa. Nov. 30, 2011) in support of their Motion to Transfer. The Court concludes that, if anything, the *Centimark* decision guides the result here. In *Centimark*, Judge Standish noted, and then scrupulously applied, the *Jumara* factors as required - - that is, in a "flexible and individualized" fashion, based on the "unique facts of each case". *Centimark*, 2011 WL 6000719, *at* *8 (citing *Lawrence v. Xerox Corp.*, 56 F. Supp.2d 442, 450-451 (D. N.J. 1999)). Thus, in *Centimark,* a forum selection clause's being given "substantial weight" took precedence over the other *Jumara* factors, which individually and collectively had not carried much weight at all in favor of either forum. Here, as noted above, the Court concludes that the *Jumara* factors do tip strongly in one direction, and to have them trumped by the forum selection clause would give that provision conclusive weight, which, as noted above, it may not be given.

[9] The Court does not believe that *Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844 (3d Cir. 2003) directs a different result. Unlike this situation here, the choice of courts there was between two courts across the Hudson River from one another, there was not developed record that supported any inconvenience to a party arising from a transfer, and there was no claim by the party opposing the transfer that the formation of the agreement containing the clause was in some way tainted. Here, the transfer would significantly uproot the individual Plaintiffs from this District, would facially and on the record work a hardship perhaps rising to the level of effectively "putting them out of court", *Zapata Off-Shore Co.*, 407 U.S. at 19, and unlike the situation in *Moneygram,* there is a substantial record developed here supporting a conclusion that the genesis of the forum selection clause was the product of at minimum, highly unbalanced bargaining power. Given the degree to which the *Jumara* factors as considered in this case weigh so significantly against transfer, the Court believes that it would require that *Moneygram* to be read as making forum selection clauses essentially conclusive to change the outcome here. This Court does not read the *Moneygram* opinion, driven by the facts present there, as making such a fundamental change to the *Jumara* analysis, and the court of appeals certainly did not say in that case that it was doing so.

District Court for the Northern District of Texas at Dallas is DENIED. The Motion to Strike filed by Defendants is DENIED.

    An appropriate order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: 9/25/12

cc:    All Counsel of Record